IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISTINA GERSZTEN,

      Plaintiff(s),                      08cv1280

                                                **ELECTRONICALLY FILED**

   v.

UNIVERSITY OF PITTSBURGH CANCER
INSTITUTE CANCER CENTERS,

      Defendant(s).

**MEMORANDUM OPINION RE: PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES (DOC. NO. 163)**

**I. Introduction**

      This is an action for gender discrimination and retaliation brought pursuant to Title VII and the PHRA.  Currently pending before this Court is the motion for attorney's fees and expenses (doc. no. 163) filed by plaintiff, Kristina Gerszten, following a jury trial in which the jury found that defendant University of Pittsburgh Cancer Institute Cancer Centers (UPMC Cancer Centers) retaliated against plaintiff in three (3) different, adverse employment decisions.  Defendant UPMC Cancer Centers has filed a brief in opposition (doc. no. 172) to said motion.

      After personally reviewing every item of the forty-one (41) page statement of plaintiff's attorney's fees, totaling $296,159.00, and expenses of $21,181.22, an exercise of which this Court is intimately familiar and well-experienced from his more than thirty (30) years of private practice, this Court finds that the hourly rates are reasonable, and that the number of hours billed are reasonable, especially in light of plaintiff's counsel's very effective trial advocacy in the face of an aggressive (albeit, always professional) opponent.  While in every previous case before this

Court involving an attorney's fee petition, this Court has reduced the hourly rates and/or the number of hours, the Court finds that the total attorney's fees and expenses in this case are quite modest, in light of the jury verdict, the determination of the opposition, and the extensive briefing and pre-trial and trial work in this case.  Quite frankly, given the legal issues in this case, and the determination and zeal of the opposing parties from the advent of this litigation, up until and including the current motion, the Court expected the attorney's fee petition to amount to around $500,000.[1]  Thus, accordingly, the Court will grant plaintiff's motion for attorney's fees and expenses (doc. no. 163), and for the first time, in the amount of the entire request of $296,159.00 in attorney's fees, and $21,181.22 in expenses, for a total award of $317,340.22.[2]

## II.  Analysis

### A.  Law in General

#### 1.      Prevailing Party

A "prevailing party" in a Title VII case may recover reasonable attorney's fees and expenses/costs.  *See* 42 U.S.C. § 2000e-5(k).  A "prevailing party" also may recover counsel fees and costs under the Pennsylvania Human Relations Act.  43 Pa.Con.Stat. § 962(c.2).

A plaintiff is considered to be a prevailing party if he or she is successful on any

---

[1]The Court notes that nowhere in defendant's opposition papers does defense counsel state that the plaintiff's total attorney's fee and expenses actually exceeded those charged by defense counsel to defendant, nor that the hourly rates of plaintiff's legal team exceeded those of defendant's legal team.

[2]The Court agrees with defendant, and will disallow the attorney's fee request of Michelle H. Lally of $9,675.00 since her fee petition is vague, and the Court surmises that most of her work for plaintiff did not relate to this litigation, although she did provide advice to plaintiff regarding her relationship with UPMC and other related matters.  See doc. nos. 163-5 and 163-10.

significant issue in litigation which achieves some of the benefit the parties sought in advancing the lawsuit. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). When a plaintiff "achieves a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award," he or she should recover a full compensatory fee. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In making this assessment, the Court "should focus on the significance of the overall relief obtained by the plaintiff." *Id.*

"Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, at 435, *citing Davis v. County of Los Angeles*, 8 E.P.D.  ¶ 944 , at 5049 (CD Cal. 1974). The Court is mindful that "a request for attorney's fees should not result in a second major litigation." *Id*. at 437.

In this case, the Court has no doubt that Plaintiff was the prevailing party in this litigation under Title VII and PHRA. Plaintiff's counsel, by the sheer monetary amount of the jury verdict alone, has obtained significant relief on behalf of her client. And, while it is true that the jury found in favor of plaintiff on her retaliation claims, but not on her gender discrimination claims, as the Supreme Court in *Hensley* stated, "the fees should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley* at 435.

In summary, the jury awarded approximately $3.1 million in damages, and the verdict in this case has been the highest plaintiff's verdict in this Court to date. Thus, there is no question that plaintiff's overall success has been significant and noteworthy. Accordingly, the Court finds that plaintiff is the prevailing party, as she has obtained "excellent results," and therefore, plaintiff's counsel is entitled to recover a "full compensatory fee." *Hensley* at 435 (citation

committed).

### 2.      Lodestar Formula

In cases such as the instant case, the Court uses the lodestar formula established by the United States Court of Appeals for the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 16 (3d Cir. 1973), which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 176 (3d Cir. 2001); *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

"A District Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours, but once the lodestar is determined, it is presumed to be the reasonable fee." *Lanni v. New Jersey*, 259 F.3d 146, 148 (3d Cir. 2001).

District Courts are vested with the discretion to reduce the lodestar, i.e., the reasonable time expended multiplied by the reasonable hourly rate, if it is not reasonable in light of the results obtained.  *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983) ('the level of a plaintiff's success is relevant to the amount of fees to be awarded"); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The Court must determine what constitutes a "a reasonable market rate for the essential character and complexity of the legal services rendered . . . ."  *Lanni,* 259 F.3d at 149, *citing, Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).  Plaintiff bears the burden of establishing this reasonable market rate.  *Rode*, 892 F.2d at 1183.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  *Blum v. Stenson*, 465 U.S. 886, n. 11 (1984).  Under the law of this Circuit, an attorney's actual billing

rate is "the starting point in ascertaining a reasonable hourly rate . . . ." *Loughner* at 180 (3d Cir. 2001).  Other Courts of Appeals also have found that actual billing rates are a significant, though not dispositive, factor in determining what constitutes a reasonable hourly rate. *See St. Louis Fire Fighters Assoc. v. City of St. Louis*, 96 F.3d 323, 332 n. 9 (8th Cir. 1996); *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001); *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991).

Our Court of Appeals has adopted the "community market rate" rule for determining a reasonable billing/market rate.  *Student Public Interest Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1447 (3d Cir. 1988).  This rule requires only "a number of representative affidavits from attorneys in the community who possess comparable qualifications and skill."  *Id*.

The approach set forth by the Court of Appeals in the *Lindy* case (and their progeny) is directly applicable to this action because this case involves a judicial award of attorney's fees. Thus, this Court will employ the lodestar formula (which requires multiplying the number of hours reasonably expended by a reasonable hourly rate) as a guide to determine an appropriate award of attorney's fees and expenses.  *Coleco Industries v. Berman, et al.*, 423 F.Supp. 275, 317 (E.D. Pa. 1976); see also *Hensley*, 461 U.S. 424 (1983).

### B.  Reasonableness of the Time Charged

Preliminary, the Court notes that this case has not only been time-consuming for the counsel and parties, this Court also has expended a substantial amount of time handling the motions and disputes that have arisen in this litigation, as well as extensive pre-trial and trial filings and conferences, including an eight (8) day trial.

In plaintiff's motion for attorney's fees and expenses, the forty-one (41) page statement of

attorney's fees and expenses and nine (9) separate supporting affidavits (doc. nos. 163-2 to 163-10), the work of plaintiff's counsel is detailed, and contrary to the arguments of defendant, the Court finds that the hours claimed, and the expenses listed, are completely reasonable and necessary to the litigation.  This Court has reviewed line by line plaintiff's law firm's statement of professional services, outlining the hours charges (Colleen Johnston - - 542.90 hours; Nikki Lykos - - 302.60 hours; Cami Davis - - 16.30 hours; and paralegal Chuck Vrscak - - 437.00 hours).

Defendant, in its response to the fee petition (doc. no. 172) seeks to reduce or eliminate what it terms as "duplicative" and non-compensatory hours of other associate attorneys, besides Ms. Johnston, as well as Mr. Vrsak, the paralegal who assisted Ms. Johnson in the preparation and trial of this matter.

In support thereof, defendant submits a chart of alleged non-compensatory hours. Without recounting each of defendant's objections, a few are worthy of discussion.  Defendant argues that charges of $3,150.50, incurred by Ms. Lycos, for her travel to, assistance of Ms. Johnston, and attendance at a trial deposition of Dr. Rosenstein in Lexington, Kentucky, is not reasonable and is duplicative.  Further, defendant argues that the attendance of Ms. Lycos at any depositions conducted by Ms. Johnston was not necessary.  Additionally, defendant has taken the position that any charges for attendance at the trial of the paralegal, Mr. Vrcsak, was "excessive for a single-plaintiff employment discrimination case in an electronic courtroom."  (Doc. no. 172 at 12).

Based upon arguments such as these, defendant seeks to reduce Ms. Johnston's time by 21.7 hours; Ms. Lykos time by 67.7, and Mr. Vrcsak's time by 53.0 hours.  With the exception of

the billing of Ms. Lally (which was discussed in footnote number 2), the Court finds defendant's position to be without merit, and as stated above, the Court finds that the attorney's fees and expenses listed were actually quite reasonable, and were neither duplicative nor redundant.

Specifically, as to defendant's argument that Ms. Lycos should not bill for her travel to and assistance of Ms. Johnston at an out of town deposition, the Court disagrees, and does not find this billing to be excessive or redundant. Additionally, as to defendant's argument that Ms. Lycos should not bill for attendance at any deposition that was handled by Ms. Johnston, the Court disagrees with defendant's position. Based upon the Court's many years as a trial attorney, the Court finds it quite reasonable and neither redundant nor excessive to have an associate or second chair at depositions in order to assist with documents/organization, and to assist in follow-up questioning of the deponent. Further, the Court finds that it was not unreasonable to have a paralegal present at trial to keep track of exhibits and to present exhibits in electronic format. In fact, it was very necessary to the orderly presentation of the evidence.

Defendant, by and through its aggressive litigation style (again, albeit, always professional), played a substantial role in creating the legal fees charged by counsel for plaintiff. The Court will resist defendant's attempts to jettison the attorney's fee petition into a "second major litigation." *Hensley*, 461 U.S. at 437.

In determining that the counsel fee request of plaintiff is reasonable, the Court has considered the extensive nature of the pre-trial filings in this case and the trial thereof, as follows:

- There were thirteen (13) written motions in limine - - five (5) filed by plaintiff and eight (8) filed by defendant.

- There were several rounds of proposed jury instructions and several drafts of "final" jury instructions on the way to the final jury instructions.  See doc. no. 93, 116, 120, 132, 149.

- Two (2) Pretrial Conferences were conducted.  See doc. nos. 117, 124.

- The trial lasted 8 days with 6 days of testimony and 2 days of deliberations.  See doc. nos. 139, 141-143, 151, 154, 155.

- Total exhibits were 89 - - 38 joint exhibits, 26 plaintiff's exhibits, and 25 defendant's exhibits.  See doc. no. 158.

- The number of witnesses totaled 18 different witnesses.  See doc. no. 57.

- The total trial time for plaintiff was 12 hours and 36 minutes and for defendant 10 hours and 34 minutes, excluding opening and closing statements.

The exceptional trial skill of plaintiff's chief trial counsel, Colleen Johnston, was demonstrated by the need for her, on behalf of plaintiff, to prove a substantial part of plaintiff's case through calling in plaintiff's case in chief, as on cross examination, defendant's witnesses. Practically, all of the witnesses called in plaintiff's case-in-chief were defendant's witnesses (current/former employees of UPMC Cancer Centers), except for plaintiff and her husband.  Ms. Johnston effectively cross-examined defendant's decision-makers and human resource "investigator," in plaintiff's case-in-chief, gaining important admissions in her examination thereof, and regularly and consistently impeaching said witness(es) by prior inconsistent statements in documents and/or in deposition testimony.  Obviously, such detailed examinations require much preparation time, and substantial assistance from her co-counsel and paralegal. Further, since the case was tried "paperless" in the electronic courtroom, paralegal assistance was required in pre-trial preparations and throughout the trial.

This Court, after undertaking its review of the time sheets, a process with which this

Court is intimately familiar, finds that the time spent litigating these clai ms, as stated above, was not only reasonable, but efficient.  Contrary to defendant's position, the Court finds that counsel for plaintiff did not submit charges for unnecessary, redundant, or excessive hours.  *Contrast Loughner*, 260 F.3d at 176.

The Court also has considered defendant's response in opposition to the motion for attorney's fees (doc. no. 172), where it disputes certain expenses.  Defendant vigorously argues that the copying costs are not properly itemized, the costs for duplicate recordings of depositions should not be recoverable, and that parking and other "undocumented expenses" for in-town counsel are not taxable against the defendant.

More specifically, defendant contends that copying costs of $3,936.39 is unreasonable, and instead seeks the Court to reduce any award for copying costs to $1,774.00 based upon the fact that defendant's copies costs were in that amount.  Defendant explains that it produced over 1,175 pages of documents, while plaintiff produced only 450 pages of documents during discovery.  Defendant does not account for the fact that the 1,175 pages of documents it produced certainly had to be copied and used by plaintiff at the depositions of the numerous UPMC employees plaintiff deposed.  Accordingly, the copying costs are reasonable and the Court will not reduce the copy costs of $3,936.39.

Defendant further argues that deposition related expenses should be excluded by stating that it should only be required to pay for the costs of the video deposition and not the transcript. Again, this Court finds this argument to be without merit.  Based upon this Court's experience, in order to effectively prepare for a trial, a transcript of the deposition is quite necessary and

reasonable.[3]

## C.  Reasonableness of the Hourly Rates

As stated above, a reasonable hourly rate is calculated according to the prevailing market rates in that community.  *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (citations omitted).  The Court must assess the experience and skill of the attorneys and compare their rates to the prevailing rates in the community for similar services by lawyers of comparable skill, experience and reputation.  *Id*.  The prevailing party bears the burden to establish by way of "satisfactory evidence" (i.e., affidavits and the like) that the requested hourly rates meet this standard.  *Id*.

Plaintiff's counsel has provided affidavits stating that the hourly billing rates of the two trial co-counsel for plaintiff, Colleen Johnston (total hours of 542.90) and Nikki Lykos (total hours of 302.60), were $350.00 and $175.00 per hour, respectively.  See doc. no. 163-2 and 163-3.  They were supported by a superb paralegal, Chuck Vrscak (total hours of 437.00) at $115.00 per hour and an associate, Cami Davis (total hours of 16.30) at $180.00 per hour.  See doc. no. 163-4 and 163-5.

These rates are within the range of prevailing attorney's fees (and even lower than normal) for chief trial counsel and other legal personnel of their experience, skill, and reputation, based upon the local legal community standards (as verified by three (3) affidavits of prominent

---

[3]The Court will not address defendant's argument about $364.00 in parking fees, and other "unexplained expenditures" totaling approximately $703.00, except to say that the Court finds defendant's arguments to be without merit, and another example that the smallest of matters is worthy of litigation and contention.

Pittsburgh attorneys - - Samuel J. Cordes (doc. no. 163-7), Timothy P. O'Brien (doc. no. 163-8), and David B. Spear (doc. no. 163-9)).  The rates requested in this case by plaintiff's counsel are the current rates charged by these attorneys for similar work.  See doc. nos. 163-2, 163-3, and 163-4.[4]

This Court, therefore, finds that the above hourly billing rates to be more than reasonable, based upon the local community standards considering plaintiff's counsel's levels of experience, reputation, and skill (see above), and based upon the Court's professional experience in such matters.

## IV.  Conclusion

Accordingly, plaintiff, as the prevailing party, is entitled to reasonable attorney's fees and costs.  The Court finds that plaintiff's request for attorney's fees and expenses were reasonable in that the hourly rates charged and the number of hours expended in this significant litigation were reasonable, if not modest, given the level of success that plaintiff's counsel achieved on behalf of their client.  Therefore, the Court will grant plaintiff's motion for attorney's fees and expenses, and will award $296,159.00 in attorney's fees and $21, 181.22 in expenses, for a total award of attorney's fees and expenses of $317,340.22.

The Court will entertain any further supplemental motion for attorney's fee by plaintiff in

_____

[4]Defendant argues that Ms. Johnston's hourly rate should be reduced to $300.00 per hour, based upon the attorney's fee petition she submitted in April 2008 in *DeFurio v. Elizabeth Forward School District*, Civil Action No. 05-1227, a case before Judge Nora Barry Fischer. Nevertheless, the Court finds that a fee of $350.00 per hour is still reasonable based upon the local legal community standards and the evidence submitted in support thereof *in this case*.  The Court will not presume that simply because plaintiff charged a certain fee at a certain point in time (the *DeFurio* case trial commenced in 2005), that her fee should remain fixed from year to year.  Obviously, with each successful verdict (as was the result in the *DeFurio* trial), Ms. Johnston's level of experience and skill increases, and so to should her hourly rate.

this case, but only after the parties first meet and confer to attempt resolution of these matters

without Court further intervention.

     An appropriate Order follows.


                This 15th day of December, 2009.

                 s/ Arthur J. Schwab        
                Arthur J. Schwab
                United States District Judge


cc:     All Registered ECF Counsel and Parties